**John Burgess, OSB No. 106498**
johnburgess@civilrightsoregon.com
**Carl Post, OSB No. 061058**
carlpost@civilrightsoregon.com
**SNYDER, POST AND BURGESS**
1000 SW Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249

**Abby Greenfield, OSB No. 243463**
abby@kedwards-law.com
**LAW OFFICE OF KATHARINE EDWARDS**
P.O. Box 417
Hillsboro, OR 97123
Telephone: (503) 664-0645
Of Attorneys for Plaintiff

## IN THE UNITED STATES DISCTRICT COURT

## IN THE DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| **S.D. and J.F.**, individually and on behalf of all others similarly situated, | Case No. 6:25-cv-1726 |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **(Eighth And Fourteenth Amendments; Article I, §§ 13 and 16 of the Oregon Constitution)** |
| **MIKE REES**; **RYAN LEGORE**; **JEREMY WAGNER**; **MARK NOOTH**; **AARON REYES**; **JOHN DOES 1–5**; and **STATE OF OREGON**, by and through the Oregon Department of Corrections, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

PAGE 1 – CLASS ACTION COMPLAINT

**PRELIMINARY STATEMENT**

1.      The Oregon Department of Corrections (ODOC) currently houses transgender women in male correctional institutions, placing them in general population units with cisgender men (often as their cellmates) without adequate protections, accommodations, or individualized assessments.[1] This practice subjects transgender women to foreseeable and severe risks of sexual and physical violence, psychological harm, and medical neglect.

2.      ODOC's policies and conduct violates the Eighth and Fourteenth Amendments to the United States Constitution, as well as Article I, §§ 13 and 16 of the Oregon Constitution. By knowingly placing transgender women in dangerous environments and disregarding the substantial risk of serious harm and urgent medical need, ODOC exhibits deliberate indifference in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. ODOC further violates the Equal Protection Clause of the Fourteenth Amendment by denying transgender women the safe housing accommodations routinely afforded to other vulnerable or cisgender women inmates and discriminating against them based on sex and transgender status. Oregon's Constitution similarly forbids the imposition of "unnecessary rigor" and "cruel and unusual punishments" upon people in custody.[2]

3.      Transgender women in ODOC custody face an extreme and well-documented risk of sexual violence. The Prison Rape Elimination Act (PREA) explicitly recognizes their vulnerability, yet ODOC has failed to implement basic PREA safeguards. Rather than conduct individualized housing assessments as required, ODOC routinely classifies and houses transgender women solely on the basis of their genitalia, without genuine consideration of gender

---

[1] Cisgender refers to an individual whose gender identity aligns with the sex they were assigned at birth. Transgender refers to an individual whose gender identity differs from the sex they were assigned at birth.
[2] Art. I, §§ 13, 16.

identity or safety. ODOC officials have confirmed that such assignments are made "solely on the basis of the individual's genitalia," a practice widely condemned by medical and correctional authorities, including the World Professional Association for Transgender Health (WPATH). By refusing to house transgender women in women's facilities or other safe placements despite knowing the risks, ODOC demonstrates deliberate indifference to substantial threats of serious harm.

4.      Plaintiff S.D.'s experiences reflect ODOC's ongoing pattern of abuse and indifference. She has been relentlessly harassed and threatened by male inmates and staff while in ODOC custody, solely because of her gender identity. She has been sexually assaulted and coerced into nonconsensual sex acts—including a sustained episode of sexual abuse by an ODOC officer who preyed on her and another transgender woman. When S.D. reported the abuse, ODOC staff either ignored her pleas for help or mocked and harassed her, telling her to "man up" because she was "in a man's prison," and repeatedly called her a "fag" and "freak." These officials, tasked with her safety, failed to protect her from harm and treated her with contempt rather than compassion. Her prior lawsuit, stemming from these events, was resolved by settlement after her release. However, upon reincarceration, ODOC placed her back in men's facilities, exposing her once again to the same known threats.

5.      Plaintiff J.F. has endured similar harm. ODOC housed J.F.—a transgender woman with a diagnosis of gender dysphoria and a legal female gender marker—at Two Rivers Correctional Institution (TRCI), a men's prison that houses many inmates with criminal histories of violent physical and sexual assault. There, she was repeatedly harassed and ultimately brutally assaulted by a male cellmate with a known history of violence. The assault caused a fractured orbital socket and permanent damage to her tear duct. Instead of being protected and moved to a

safe facility, J.F. was punished. She was placed in solitary confinement, denied access to appropriate medical care, refused gender-affirming accommodations, and subjected to retaliatory discipline for asserting her rights. ODOC never conducted a meaningful review of her safety needs, never flagged her as a vulnerable inmate, and never offered to move her to Coffee Creek Correctional Facility (CCCF) or other protective placement. Her injuries and trauma are emblematic of the systemic failures transgender women face in ODOC custody.

6.      ODOC's failures are not only immoral and unconstitutional; they are in direct violation of its own written policies. ODOC Policy 40.1.13, which is intended to implement PREA, requires that the Department "provide housing assignments that reduce the likelihood of sexual abuse and harassment while an AIC is in DOC custody." It mandates intake screening to identify vulnerable inmates and individualized determinations for appropriate housing placements. Under PREA's national standards, prison facilities must consider on a "case-by-case basis" whether a transgender inmate should be placed in a male or female facility, giving serious consideration to the inmate's own views of their safety. (§115.41(d)(9)). Transgender inmates must be allowed to shower separately for privacy and safety. (§115.42 (f)). And crucially, PREA forbids placing transgender inmates in segregated housing—solely because of their transgender status—unless no other alternative is available, and even then, only temporarily and with access to programming then only as a last resort and for limited duration. (§115.43). Yet ODOC has ignored these requirements. Transgender women remain in general population units with cisgender men or are offered only the false "choice" of punitive solitary confinement. The designation of "vulnerable inmate" has been rendered discretionary and is rarely applied even when criteria are clearly met,as in S.D.'s and J.F.'s cases.

7.      The experiences of Plaintiffs S.D. and J.F. are not isolated incidents. Transgender women across ODOC facilities—including Z.Z., L.B., and S.S.—have endured repeated sexual abuse, physical assaults, psychological torment, and retaliation simply for existing as trans women in men's prisons.

8.      Z.Z. was raped and beaten by a known violent cellmate at TRCI. When she sought help, an ODOC PREA officer told her she would not be believed and later instructed her via voicemail to stop calling the PREA hotline.

9.      L.B. was verbally harassed and sexually threatened by prisoners and staff at Snake River Correctional Institution (SRCI); when she complained, ODOC retaliated by moving her to a unit dominated by gang members known to target trans women.

10.     S.S.—like S.D.—was legally recognized as female but housed at TRCI in a cell with a known predator, despite her pleas for protection. She was raped, denied medical care and a rape kit, and then forced, like Z.Z., to remain in proximity to her assailant. These cases reveal a disturbing and consistent pattern: ODOC disregards credible warnings, fails to follow basic PREA protocols, and punishes victims rather than protecting them. Transgender women are forced to shower in open view of male inmates, subjected to degrading strip searches by male officers, and given only the false "choice" of disciplinary segregation in lieu of safety. ODOC's culture of institutionalized neglect and discrimination has caused lasting trauma, increased suicidality, and exacerbated gender dysphoria among vulnerable inmates. This is not merely bureaucratic failure—it is deliberate indifference to the safety and dignity of some of the most at-risk people in ODOC custody.

PAGE 5 – CLASS ACTION COMPLAINT

11. Plaintiff seeks immediate and class wide injunctive relief. Specifically, Plaintiff asks this Court to require ODOC to implement constitutionally sufficient housing policies and practices for transgender women, including:

(a) individualized assessments for all transgender women with a presumption of housing consistent with gender identity unless specific, articulable reasons justify otherwise;

(b) creation of safe, non-punitive housing alternatives such as transfer to CCCF (Oregon's only women's prison), voluntary transgender/gender non-conforming housing units, or other protective options that do not isolate or restrict access to programs and privileges;

(c) mandatory staff training to ensure compliance with PREA and ODOC Policy 40.1.13, including zero tolerance for staff harassment; and

(d) immediate protective measures for transgender inmates who report abuse, and clear procedures for confidential reporting, prompt investigation, and accountability.

12. Plaintiffs also seek a Temporary Restraining Order and Preliminary Injunction to prevent further irreparable harm while this litigation proceeds. Without Court intervention, Plaintiffs S.D. and J.F. and other class members will continue to face an unacceptable risk of sexual assault, psychological deterioration, and serious constitutional injury. The requested relief is narrowly tailored, urgently needed, and in keeping with the evolving national consensus on the treatment of transgender prisoners. For example, in 2024 the Colorado Department of Corrections, in response to a similar class action, created both a transgender "Integration Unit" at a women's prison and a "Voluntary Transgender Unit" in a men's facility to provide safe,

individualized placements. Oregon's transgender women in custody deserve no less. This Court should declare ODOC's current policies unlawful and order meaningful reforms that ensure these women are housed safely, humanely, and in accordance with constitutional standards.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3)–(4) (jurisdiction over civil rights actions).

14. Plaintiffs bring claims under 42 U.S.C. § 1983 for violations of their rights under the Eighth and Fourteenth Amendments to the United States Constitution.

15. This Court has authority to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201–2202 and Rule 65 of the Federal Rules of Civil Procedure.

16. This Court has supplemental jurisdiction over Plaintiffs' claims brought under the Oregon Constitution pursuant to 28 U.S.C. § 1367, as those claims arise from the same case or controversy as the federal claims.

17. Venue is proper in the District of Oregon under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, and Defendants reside in this District and perform their official duties here. Plaintiff S.D. is currently incarcerated at Oregon State Correctional Institution (OSCI), and Plaintiff J.F. is currently or was recently incarcerated at TRCI.

## PARTIES

18. J.F. is a transgender woman currently or recently incarcerated in the custody of the ODOC, most recently housed at TRCI. J.F. is a legal female and has been diagnosed with gender dysphoria. Despite clear documentation of her gender identity and known vulnerability,

ODOC placed her in a general population housing unit at TRCI with male inmates, where she was assaulted by a known predator. J.F. brings this action for injunctive and declaratory relief, as well as compensatory and punitive damages for constitutional violations committed against her.

19.     S.D. is a transgender woman currently incarcerated in ODOC custody. She has previously been housed at OSCI and other men's prisons. S.D. is a legal female and has a long history of diagnosed gender dysphoria, prior suicide attempts, and documented trauma resulting from placement in male housing units. She brings this action for prospective injunctive and declaratory relief on behalf of herself and similarly situated transgender women in ODOC custody.

20.     Mike Rees is the current Director of the ODOC. He is responsible for the overall administration, policies, and practices of ODOC, including policies concerning classification, housing, safety, and medical care of transgender individuals in custody. He is sued in his individual and official capacity for injunctive and declaratory relief.

21.     Ryan LeGore is the Superintendent of TRCI, where Plaintiff J.F. was incarcerated and assaulted. He is responsible for implementing ODOC policy and overseeing the safety and security of adults in custody at TRCI. He is sued in his individual and official capacity.

22.     Jeremy Wagner is the Superintendent of OSCI, where Plaintiff S.D. has been housed. He is responsible for the operation and safety of OSCI. He is sued in his individual and official capacity.

23.     Mark Nooth is a former or current ODOC official who held supervisory responsibilities over TRCI. He was personally involved in or responsible for housing, classification, and policy decisions regarding transgender inmates. He is sued in both his individual and official capacities.

PAGE 8 – CLASS ACTION COMPLAINT

24. Aaron Reyes is or was an ODOC administrator involved in decisions concerning classification, mental health, or placement of transgender adults in custody. He is sued in his individual and official capacities.

25. Joshua Highberger is the Assistant Director of Operation at ODOC and participates in decisions concerning classification, mental health, or placement of transgender adults in custody. He is sued in his individual and official capacities.

26. John Does 1-5 are management level employees within ODOC who participate in decisions concerning classification, mental health, or placement of transgender adults in custody. They sued in their individual and official capacities.

27. ODOC is an agency of the State of Oregon. While ODOC is immune from monetary damages under the Eleventh Amendment, it is named here as a proper defendant for purposes of declaratory and injunctive relief.

**CLASS ALLEGATIONS**

28. Plaintiffs bring this action pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure on behalf of themselves and all similarly situated persons. This is an injunction class action seeking systemic declaratory and injunctive relief to address ODOC's uniform policies and practices that subject transgender women in custody to unconstitutional, unsafe, and discriminatory conditions of confinement.

29. Class Definition: The proposed class is defined as: "All current and future transgender women incarcerated in ODOC facilities." This includes all transgender women who were assigned male at birth and who have a female gender identity who are or will be confined at ODOC, whether or not they have been formally diagnosed with gender dysphoria, and regardless of whether they have undergone any form of gender-affirming surgery.

PAGE 9 – CLASS ACTION COMPLAINT

30.     Numerosity: The class is so numerous that joinder of all members is impracticable. On information and belief, dozens of transgender women are currently incarcerated in ODOC custody. Class members are housed at multiple facilities throughout the state, and the class is dynamic as individuals enter and exit ODOC custody, rendering individual joinder impracticable.

31.     Commonality: There are numerous questions of law and fact common to all class members, including but not limited to:

a.     Whether ODOC's policy and practice of housing transgender women in men's prisons without adequate safety precautions or consideration of gender identity violates the Eighth Amendment's prohibition on cruel and unusual punishment;

b.     Whether ODOC's classification and housing practices violate the Equal Protection Clause of the Fourteenth Amendment by discriminating against transgender women based on sex and transgender status;

c.     Whether ODOC's conduct violates Article I, §§ 13 and 16 of the Oregon Constitution, which prohibit cruel and unusual punishment and unnecessary rigor;

d.     Whether ODOC has failed to comply with PREA and ODOC Policy 40.1.13 in its screening, classification, and protection of transgender individuals;

e.     What forms of injunctive and declaratory relief are necessary to bring ODOC's practices into compliance with constitutional and statutory obligations.

PAGE 10 – CLASS ACTION COMPLAINT

32.     These questions can be resolved class-wide and will yield uniform answers that address the systemic nature of the challenged practices.

33.     Typicality: J.F. and S.D.'s claims are typical of the class. Both are transgender women who have been housed in ODOC men's prisons under conditions that forced them to experience physical violence, sexual assault, verbal harassment, and retaliatory discipline. Their injuries result from the same institutional policies and failures that affect all members of the class—particularly ODOC's refusal to conduct proper individualized assessments and its blanket placement of transgender women in men's facilities that place them at extreme risk.

34.     Other class members, such as Z.Z., L.B., and S.S., have endured similar harm under ODOC's custody. Z.Z. was repeatedly raped and physically abused by a known predator while ODOC staff failed to act and ultimately instructed her to stop calling the PREA hotline. L.B. faced relentless harassment and was moved into a more dangerous housing unit in retaliation for reporting abuse. S.S. was raped by her cellmate after ODOC ignored her requests for protection and then forced to remain in the same unit with her attacker. These and other experiences reinforce that ODOC's policies expose every transgender woman in custody to the same constitutional violations.

35.     Adequacy: Plaintiff will fairly and adequately represent the class. S.D. seeks relief that will benefit all members of the class and have no conflicts of interest. Plaintiff is represented by experienced counsel with deep knowledge of prisoners' rights, civil rights, and class litigation, including claims involving systemic constitutional violations, conditions of confinement, and vulnerable populations. Counsel will vigorously prosecute this action on behalf of the class.

36.     Rule 23(b)(2) – Injunctive Class: Class certification is appropriate under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class as a whole. ODOC maintains a uniform policy of assigning transgender women to male prisons without conducting meaningful, individualized assessments of vulnerability, gender identity, or medical need. Transgender women are denied access to gender-affirming housing options, and those who report abuse are often subjected to retaliation or punitive isolation. The primary relief sought in this action is injunctive and declaratory in nature, aimed at changing ODOC's systemic practices. As such, Rule 23(b)(2) certification is the appropriate and necessary mechanism for addressing these ongoing constitutional violations and ensuring relief for all class members.

## FACTUAL ALLEGATIONS

### *Transgender Women in ODOC Custody and Their Vulnerability to Abuse*

37.     Heightened Risk of Sexual Assault: Transgender women incarcerated in men's prisons face an extraordinarily high risk of sexual assault, far exceeding that of the general inmate population. This is a well-recognized fact in corrections and has been acknowledged by the U.S. Department of Justice and the National PREA Commission. A 2013 study by the Department of Justice estimated that nearly 35% of transgender people in state and federal prisons were sexually assaulted between 2007 and 2012.[3] A comprehensive study in California found that transgender inmates—primarily transgender women in men's prisons—were 13 times more likely to be sexually assaulted than other inmates, with 59% of transgender inmates

---

[3] U.S. DEP'T OF JUSTICE OFF. OF JUSTICE PROGRAMS, *Sexual Victimization in Prisons and Jails Reported by Inmates*, 2011–12, NCJ No. 241399, Supplemental Table 1 (2013).

PAGE 12 – CLASS ACTION COMPLAINT

reporting at least one instance of sexual assault during their incarceration.[4] By comparison, the prevalence of sexual assault for the incarcerated population overall was 4.4%.[5] The 2009 National Prison Rape Elimination Commission noted that "gender nonconformity places transgender people at extremely high risk for abuse" in prison.[6] In light of these findings, the Commission's report recommended that intake and housing decisions for transgender prisoners must be individualized and not solely based on genitalia or birth sex, to mitigate the risk of victimization.[7] Congress, in passing PREA, explicitly recognized the heightened risks of sexual violence faced by inmates and mandated nationwide standards to protect vulnerable prisoners.[8]

38.     National Standards (PREA) for Transgender Inmates: The PREA regulations, applicable to all state prisons that accept federal funds, include specific provisions addressing the safety of transgender inmates. Under 28 C.F.R. § 115.42(b), the agency "shall make individualized determinations" about how to ensure the safety of each inmate. In particular, decisions whether to house a transgender inmate in a male or female facility must be made on a "case-by-case basis whether a placement would ensure the inmate's health and safety, and whether the placement would present management or security problems." §115.42(c). Facility placement determinations must also account for a transgender inmate's "own views with respect to his or her own safety shall be given serious consideration." §115.42(e). Regardless of the placement, transgender inmates also "shall be given the opportunity to shower separately from other inmates." §115.42(f). Importantly, PREA also warns against placing inmates "at high risk

---

[4] Valerie Jenness, Cheryl L. Maxson, Kristy N. Matsuda, & Jennifer Macy Sumner, *Violence in California Correctional Facilities: An Empirical Examination of Sexual Assault* UC IRVINE CTR FOR EVIDENCE-BASED CORRECTIONS (2007) https://www.prearesourcecenter.org/sites/default/files/library/54-cafinalpreareport.pdf
[5] *Id.*
[6] NATIONAL PRISON RAPE ELIMINATION COMMISSION, NATIONAL PRISON RAPE ELIMINATION COMMISSION REPORT (2009).
[7] *Id.*
[8] *Prison Rape Elimination Act of 2003,* 42 U.S.C. § 15601.

PAGE 13 – CLASS ACTION COMPLAINT

of victimization" in solitary confinement or protective custody as a means of separating them from "likely abusers" unless there are no other options available. § 115.43(a). When no other alternative exists but segregated housing, PREA mandates that the involuntary protective custody be a well-documented and temporary measure that maintains access to "programs, privileges, education, or work opportunities" subject to review. § 115.43(b). In short, the PREA standards require prison authorities to proactively protect transgender prisoners through appropriate housing and supervision, without defaulting to punitive measures.

39.    ODOC's Knowledge of Risk: ODOC has been well aware of the disproportional risks facing transgender women in its custody. ODOC's own Policy 40.1.13 ("Prison Rape Elimination Act") incorporates the PREA standards and explicitly aims to reduce sexual abuse and harassment.[9] The policy, in effect since at least September 1, 2016, states that "the department shall provide housing assignments that reduce the likelihood of sexual abuse and sexual harassment while an inmate is incarcerated".[10] It mandates that "each inmate shall be assessed at the Intake Center" (Coffee Creek Intake Center (CCIC))[11] for their risk of vulnerability or abusiveness.[12] It further requires that "[t]he department makes individualized determinations about how to ensure the safety of each inmate including housing".[13] The policy provides specific criteria and screening tools to identify "Vulnerable Inmates" and "Aggressive Inmates," and notes that an inmate can be identified as vulnerable based on factors like gender non-conforming appearance or a history of sexual victimization.[14] Notably, ODOC Policy 40.1.13(C) and (D) mirrors the PREA mandate for individualized decisions . Thus, on paper,

---

[9] 40.1.13(I)(A) states "the department has zero tolerance for sexual abuse and sexual harassment." https://www.oregon.gov/doc/rules-and-policies/Documents/40-1-13.pdf
[10] 40.1.13(c).
[11] CCIC is located at CCCF but is operated separately.
[12] 40.1.13(c)(1).
[13] 40.1.13(c)(3).
[14] 40.1.13(1)(a)(H); 40.1.13(1)(a)(F).

PAGE 14 – CLASS ACTION COMPLAINT

ODOC has recognized that transgender inmates require special consideration and that housing determinations should account for their safety and gender identity. In practice, however, ODOC has systematically failed to live up to these standards, as shown by Plaintiff's experiences and those of other class members.

40.    General ODOC Practice – Housing by Birth Sex: Despite the PREA mandate for case-by-case placement, mirrored by ODOC's own incorporated policy, ODOC's de facto practice has been to house all inmates according to their birth-assigned sex or genitalia, without exception for transgender women. Transgender women in ODOC custody have almost invariably been placed in men's facilities. Upon intake at CCIC (which serves as the intake center for all genders), transgender women are typically classified as "male" based on their visible anatomy and then transferred to a men's prison. ODOC has refused to transfer transgender women to CCCF (the only women's prison in Oregon) in all but the rarest circumstances. By ODOC's own admission in similar litigation, they have never immediately housed a transgender woman in a women's facility at intake, regardless of her safety concerns. Only recently, under external pressure and litigation, have a few transgender women been transferred to CCCF as an exception.[15] This one-size-fits-all approach of using male facilities for transgender women directly contravenes PREA's and ODOC's requirement of individualized placement and has predictably and needlessly exposed transgender inmates to abuse.

41.    Unsafe Conditions in Male Facilities: Transgender women in Oregon's male prisons are placed in an environment where they are viewed as easy targets. Many present feminine characteristics such as having breasts from hormone therapy and displaying feminine mannerisms, which make them stand out in a population of cisgender males. They are frequently

_____

[15] The undersigned is aware of one trans woman at CCCF (Z.Z.) though it is unknown whether her placement there is permanent.

PAGE 15 – CLASS ACTION COMPLAINT

subjected to derogatory slurs, sexualized comments, groping, threats, harassment, and sexual violence from other inmates. Housing assignments often double-bunk transgender women with male cellmates, some of whom have histories of violence, sexual assault, or aggressive designations. In these close quarters, transgender women live in constant fear. Showering or using the restroom becomes a perilous ordeal, as they may be watched or accosted by male inmates. ODOC has failed to provide any routine accommodation like separate shower times; transgender women are typically expected to undress and shower in view of male prisoners, which has led to harassment and assault. ODOC staff, rather than mitigating these dangers, sometimes exacerbate them by "outing" or identifying a transgender inmate to others, or by failing to enforce rules against harassment. For example, S.D. and other trans women report that correctional officers have intentionally called them by their former male names or referred to them as "he/him" in front of others, essentially signaling that they are transgender and inviting further ridicule or abuse. The cumulative effect is that transgender women in ODOC custody experience conditions of confinement far more severe and dangerous than other prisoners, solely because they are transgender.

42.    Retaliation and Deterrence from Reporting: A tragic consequence of the unsafe conditions is that many transgender inmates are terrified to report abuse or seek help, knowing that ODOC's typical response is either ineffective or punitive. Several transgender women have reported that after they complained about sexual victimization, prison staff either ignored the complaint, mocked them, or worse – took actions that put them at greater risk. As mentioned, L.B. was moved to a unit with a large population of gang-affiliated inmates (known as "solid dudes") after she filed grievances and PREA reports. ODOC staff openly told her that if she "kept making calls" to report abuse to either the Inspector General or to the PREA hotline, they

PAGE 16 – CLASS ACTION COMPLAINT

would "find a place" for her – implying she would be sent somewhere even more dangerous. This type of retaliation has a chilling effect: it sends a message to all trans inmates that seeking protection will backfire. In Z.Z.'s case, after she filed an external tort claim about her cellmate's assaults, ODOC finally moved her out of that cell and initiated a PREA investigation; but during the investigation, other inmates got wind of it and labeled her a "snitch," leading to further harassment. Z.Z. then stopped calling the PREA hotline because a staff member left her a voicemail ordering her to stop calling and presumably to handle it through internal channels. In short, ODOC has failed to create a safe avenue for trans women to get help – too often, their cries are met with either indifference or hostility. The predictable result is underreporting of assaults and a perpetuation of abuse in the shadows.

43.    Lack of Medical and Mental Health Support: Transgender inmates generally also have serious medical and mental health needs related to gender dysphoria and trauma, which ODOC has a duty to address. Housing trans women in environments where they are constantly under threat takes a profound psychological toll. Many suffer from Post-Traumatic Stress Disorder (PTSD), anxiety, depression, and other trauma-related disorders as a result of both pre-incarceration experiences and in-custody victimization. ODOC's deliberate indifference to safety worsens these medical and mental health conditions. L.B., for example, has multiple diagnosed mental health conditions (schizoaffective disorder, PTSD, panic disorder, etc.), all of which have been exacerbated by living in fear in a men's prison without adequate protection. She experiences "pervasive anxiety and severe depression" that interfere with basic life functions, which she attributes to ODOC's ongoing failure to keep her safe. ODOC policy requires that Vulnerable Inmates be identified and treated as such, but when that policy is ignored, the mental health fallout is severe. In S.D.'s case, after she was sexually assaulted, rather than receive

PAGE 17 – CLASS ACTION COMPLAINT

trauma counseling and supportive care, she was punished and placed in segregation on a "disciplinary" pretext—left to grapple with the trauma alone, causing her significant psychological harm. The Eighth Amendment's protection extends to serious medical needs, including mental health needs arising from trauma. Here, ODOC's indifference to housing safety is directly causing and compounding serious mental health injuries for trans women.

### Plaintiff J.F.

44.    Plaintiff J.F. is a transgender woman currently incarcerated in the custody of the ODOC. She has been diagnosed with gender dysphoria and has a legal female gender marker under Oregon law. Despite this, ODOC has housed J.F. exclusively in men's prisons, including at TRCI, where she has endured brutal assault, retaliation, and persistent disregard for her basic safety and medical needs.

45.    J.F. entered ODOC custody with a known history of trauma, mental health disorders, and gender dysphoria. Her vulnerability was documented by ODOC staff, and she repeatedly requested placement consistent with her gender identity and safety needs. ODOC ignored those requests.

46.    Instead of conducting an individualized housing assessment or providing meaningful accommodations under ODOC Policy 40.1.13 or PREA, ODOC designated J.F. as "male" and assigned her to a general population unit at TRCI, a men's prison. She was housed with cisgender male inmates, without any protective measures, despite presenting feminine characteristics and a known history of vulnerability to sexual violence.

47.    Shortly after her arrival at TRCI, J.F. was housed in a cell with a male inmate who had a documented history of violence and who had previously threatened transgender prisoners. Despite J.F.'s repeated pleas for reassignment based on her fear for her safety, ODOC officials

PAGE 18 – CLASS ACTION COMPLAINT

refused to act. She alerted staff—verbally and in writing—that she feared her cellmate and believed she was at imminent risk of harm. ODOC failed to intervene.

48.    On or about May 30, 2023, while confined in her cell at TRCI, J.F. was violently attacked by her cellmate. The assault involved multiple closed fist blows to her face and head while she was asleep. As a result of the attack, J.F. suffered a fractured orbital socket, a damaged tear duct, and ongoing neurological symptoms. Her injuries were severe and immediately visible.

49.    Rather than treating J.F. as a victim, ODOC treated her as a disciplinary problem. She was immediately placed in segregation following the attack and was denied proper medical attention. J.F. was kept in solitary confinement for an extended period following the incident— over 30 days—during which she was denied access to mental health care, gender-affirming hygiene items, and follow-up treatment for her injuries.

50.    ODOC conducted a disciplinary proceeding against J.F., issuing her an incident report and imposing punishment despite clear evidence that she had been the victim of an unprovoked assault. The disciplinary hearing was devoid of due process and failed to account for her prior warnings to staff, her documented vulnerability, or her physical injuries. Her cellmate faced no meaningful consequences.

51.    J.F.'s efforts to seek protection and redress under ODOC's internal grievance process and PREA protocols were met with indifference. Her PREA complaint was either not properly investigated or was closed without meaningful findings. She was never interviewed in a trauma-informed manner, and ODOC did not conduct any substantive review of her classification or cell assignment process.

52.    Following her release from segregation, J.F. continued to face retaliation and targeting by ODOC staff. She was transferred to units known to be unsafe, her gender identity

PAGE 19 – CLASS ACTION COMPLAINT

was mocked by officers, and her use of the grievance system was met with threats of further segregation. Staff refused to call her by her legal name and instead referred to her using masculine pronouns and derogatory language in front of other inmates.

53.    At no point did ODOC offer J.F. the option of transferring to CCCF, Oregon's only women's prison. Nor did ODOC consider placing her in a gender-affirming protective unit. Instead, ODOC insisted on her continued placement in male general population settings, despite her injuries and repeated expressions of fear.

54.    The trauma resulting from the assault and ODOC's response has had lasting effects on J.F.'s physical and psychological health. She suffers from post-traumatic stress disorder, nightmares, depression, and ongoing anxiety. Her gender dysphoria has been exacerbated by the stress of being confined in a hostile and unsafe environment. The lasting damage includes not only her injuries, but the enduring knowledge that ODOC officials deliberately disregarded her pleas for protection.

55.    J.F.'s experience is representative of the broader failure of ODOC to comply with PREA, its own policies, and constitutional mandates. Like other transgender women in ODOC custody, she was denied meaningful screening and classification, placed in an environment that exposed her to serious harm, and punished when she sought protection.

56.    J.F. continues to live in a state of constant fear of renewed assault and retaliation as a result of ODOC's housing practices. Having already been brutally attacked by a violent male cellmate, she reasonably believes that future harm is imminent so long as she remains confined in men's facilities without adequate protections. The trauma of her prior assault has left her hypervigilant, sleepless, and unable to feel safe in her cell, shower, or recreation areas. Correctional staff routinely disregard her safety concerns, misgender her in front of other

PAGE 20 – CLASS ACTION COMPLAINT

inmates, and have demonstrated a pattern of retaliation when she reports threats. This combination of past victimization, persistent harassment, and ODOC's categorical refusal to transfer her to a safe and gender-affirming facility creates an ongoing, credible risk of serious harm that no amount of grievance filing can mitigate. Absent court intervention, J.F. remains trapped in conditions where she is exposed daily to the substantial likelihood of further physical and psychological injury.

57.     J.F. has exhausted administrative remedies available to her and timely filed state court habeas proceedings seeking relief. She continues to suffer the effects of ODOC's unconstitutional conduct and brings this action to obtain both redress for past harm and injunctive relief to prevent further abuse of herself and others similarly situated.

### *Plaintiff S.D.*

58.     Plaintiff S.D. is a transgender woman currently incarcerated in the custody of the ODOC. She has a legal female gender marker under Oregon law and a long-documented history of gender dysphoria, PTSD, suicidality, and vulnerability to sexual violence. Despite this, ODOC has repeatedly housed S.D. in general population men's facilities, including OSCI, without adequate protections or individualized placement review.

59.     S.D.'s history with ODOC includes a prior incarceration during which she was repeatedly sexually assaulted, coerced, harassed, and exploited. During that prior term, she was preyed upon by an ODOC correctional officer—Reuben Benavidez—who engaged in a pattern of escalating sexual abuse involving both S.D. and another transgender cellmate. Benavidez routinely entered their cell under false pretenses, made sexually explicit comments, and ultimately coerced the two inmates into performing sex acts while he watched and recorded with his personal cell phone.

PAGE 21 – CLASS ACTION COMPLAINT

60.     Despite ODOC's knowledge of S.D.'s transgender status and her documented risk factors under ODOC Policy 40.1.13 (including gender nonconformity, history of trauma, and expressed fear for her safety), she was housed in a cell with an inmate with a known propensity for sexual violence and assigned to a unit where she faced harassment from staff and inmates alike. Her requests for protection and transfer were ignored or dismissed. When she attempted to report the abuse, she was mocked and told by staff that she needed to "man up" because she was "in a man's prison." She was routinely misgendered and called a "fag," "freak," and other slurs by ODOC employees.

61.     Rather than protecting S.D., ODOC responded to her reports by placing her in disciplinary segregation, further isolating her and compounding her trauma. She was not offered trauma counseling or mental health support during this time. The experience severely destabilized her mental health and left her in a state of extreme psychological distress.

62.     S.D. filed a federal civil rights action based on the sexual abuse and deliberate indifference she experienced during that earlier incarceration. That lawsuit was resolved by settlement in March 2025. S.D. was released from custody but subsequently reincarcerated following a parole violation or new conviction.

63.     Despite her previous litigation and ODOC's full knowledge of her history of victimization and gender identity, ODOC has placed S.D. back into men's prisons, including OSCI, where she is once again exposed to many of the same threats and systemic failures. She remains housed in male general population units, surrounded by cisgender men, without individualized review of her safety needs or consideration of alternatives like transfer to CCCF.

64.     Since her reincarceration, S.D. has again experienced verbal harassment from staff and inmates, including transphobic slurs and threats. She has been housed in units with

PAGE 22 – CLASS ACTION COMPLAINT

known aggressors and placed in double cells with men without screening for compatibility or safety. Correctional officers continue to misgender her and have intentionally referred to her using male pronouns and her "dead name" in front of other inmates, endangering her and subjecting her to humiliation and abuse.

65.    On multiple occasions, S.D. has attempted to invoke the protections afforded under PREA and ODOC Policy 40.1.13. Her efforts have been ignored, delayed, or retaliated against. Grievances have gone unanswered or been dismissed without investigation. She has been threatened with disciplinary action for "lying" or "misusing the grievance process" when she reported threats or unsafe housing conditions.

66.    Despite meeting multiple "vulnerability" factors outlined in ODOC's own policies—including her gender identity, prior history of victimization, and ongoing mental health diagnoses—S.D. has not been designated as a Vulnerable Inmate. ODOC has refused to conduct a full classification review and continues to house her as if she were a cisgender man.

67.    The psychological impact of this treatment has been severe. S.D. has experienced suicidal ideation, panic attacks, insomnia, and retraumatization from being placed back into a system that failed to protect her before. Rather than receiving gender-affirming care and support, she has been subject to retraumatization at the hands of the same system.

68.    S.D. remains at risk of serious physical and psychological harm while ODOC continues to house her in a facility that fails to account for her gender identity, history of sexual assault, and constitutional rights. She brings this action to prevent further violations of her rights and to obtain systemic injunctive relief on behalf of herself and all similarly situated transgender women incarcerated in ODOC custody.

PAGE 23 – CLASS ACTION COMPLAINT

*Systemic Allegations and Other Class Member Experiences*

69.     Plaintiffs' experiences are not outliers; they reflect a systemic and dangerous pattern. ODOC continues to house transgender women in men's prisons without individualized risk assessment, without access to safe and gender-affirming housing, and without adequate staff training or grievance accountability. The Department has repeatedly ignored warnings, internal reports, and mounting legal claims. The lived experiences of other class members—such as Z.Z., L.B., S.S., and others—further illustrate ODOC's widespread failure to protect some of its most vulnerable prisoners.

70.     Z.Z., a transgender woman in ODOC custody, was housed in male facilities including Oregon State Penitentiary (OSP) and TRCI. Despite her known transgender status and obvious vulnerability, ODOC placed her in a cell with a convicted sex offender serving a 40-year sentence for violent sexual assaults on women. That cellmate raped, beat, and sexually assaulted Z.Z. repeatedly. When she reported the assaults, ODOC staff delayed any meaningful response. One officer told her to "get over it." Z.Z. ultimately filed a tort claim notice from inside the prison, prompting ODOC to belatedly open a PREA investigation. By that time, the damage was done and Z.Z. endures life-altering trauma. Z.Z. was labeled a "snitch" by other inmates, transferred briefly to CCCF only for testimony, and then returned to a men's facility. No permanent housing or safety solution has been provided. Her ongoing lawsuit continues to highlight ODOC's deliberate indifference.

71.     L.B., a transgender woman currently incarcerated at Snake River Correctional Institution (SRCI), has endured routine harassment and abuse from both prisoners and ODOC staff. Despite her extensive mental health diagnoses—including PTSD, panic disorder, and schizoaffective disorder—she has been housed in general population in a men's prison notorious

PAGE 24 – CLASS ACTION COMPLAINT

for gang affiliation and hostility toward LGBTQ individuals. After filing grievances and seeking protection, L.B. was transferred into a housing unit dominated by known gang members. She was pepper-sprayed, handcuffed, and disciplined after being assaulted—effectively punished for her own victimization. Her state habeas filings and medical records describe a rapid deterioration of her mental health, driven by fear, isolation, and ODOC's refusal to house her in a setting that acknowledges her gender identity or safety needs.

72.     S.S., another transgender woman incarcerated at TRCI, similarly faced horrific abuse due to ODOC's failure to follow even the most basic protective protocols. Despite being legally recognized as female and having expressed concerns about her safety, S.S. was celled with an inmate with a known and propensity for aggression and sexual violence. In 2023, she was raped by her cellmate. ODOC failed to provide her with a timely rape kit, did not separate her immediately from her attacker, and did not initiate trauma-informed care. When she attempted to report the abuse, ODOC responded with retaliation—keeping her in the same unit as the inmate who attacked her, refusing to reclassify her, and minimizing her injuries. Her federal complaint alleges Eighth and Fourteenth Amendment violations and mirrors the same systemic failings identified in this class action. S.S. remains in a men's facility and continues to suffer the consequences of ODOC's inaction.

73.     ODOC's failure to act persists despite repeated notice. Plaintiff S.D., Z.Z., L.B., S.S., and others have all filed grievances, court claims, or administrative complaints. Each has described similar failures: housing determinations based solely on genitalia, blatant disregard for safety warnings, systemic abuse by staff and prisoners, and retaliation for speaking out. Disturbingly no one has received meaningful, long-term safety accommodations and there are likely additional victims who remain silent out of fear.

PAGE 25 – CLASS ACTION COMPLAINT

74.     The harm suffered by Plaintiff and class members is all-encompassing. They have endured physical injuries including lacerations, bruises, and internal injuries from sexual assaults. Some class members have contracted sexually transmitted infections because of sexual violence and rapes. Plaintiffs and class members experience psychological injuries, including PTSD, severe anxiety, suicidal ideation, and exacerbated gender dysphoria. Some have been diagnosed with trauma-related disorders while in custody; others have experienced mental health collapse after being assaulted or retraumatized by ODOC's practices. These harms are ongoing, irreparable, and severe.

75.     ODOC's leadership has acted with deliberate indifference. Despite knowledge of the systemic risks facing transgender women, ODOC has refused to create a reliable policy for individualized gender-based housing. It has ignored best practices from the World Professional Association for Transgender Health (WPATH), the National Commission on Correctional Health Care (NCCHC), and the U.S. Department of Justice's PREA standards. ODOC remains out of step with jurisdictions like California and Colorado, where structural reforms have created safer conditions for transgender prisoners.

76.     ODOC's failure cannot be justified by security, budgetary, or administrative burdens. Other vulnerable groups—such as youth, the elderly, and individuals with severe mental illness—receive protective housing when needed. Transgender women, by contrast, are routinely denied protection and affirming placement. There is no legitimate penological interest in exposing them to daily risk of rape, assault, and degradation.

77.     ODOC's continued refusal to act, despite overwhelming evidence and a growing body of case law, is not just negligent, it is unconstitutional. It constitutes cruel and unusual

PAGE 26 – CLASS ACTION COMPLAINT

punishment, violates equal protection, and contravenes Oregon's constitutional prohibitions against unnecessary rigor and degrading treatment.

78.     Plaintiffs and the class therefore seek immediate and systemic injunctive relief to prevent further irreparable harm, protect the dignity and safety of incarcerated transgender women, and bring ODOC's practices into compliance with state and federal law.

79.     ODOC has a longstanding policy and practice of housing transgender women in male prisons without adequate consideration of individual vulnerability, gender identity, or medical need. Despite clear constitutional mandates, national standards, and well-documented risks, ODOC continues to treat transgender women as men for purposes of housing, often placing them in general population units with cisgender men—without protective accommodations or alternatives.

80.     ODOC's intake and classification systems default to anatomical sex rather than gender identity. While ODOC maintains that it uses a multidisciplinary committee to review transgender placements, that committee's decisions are made without transparency, objective criteria, or clear enforcement mechanisms. The process lacks due process protections, documentation, or appeal rights for the incarcerated individuals whose safety it directly affects.

81.     ODOC routinely fails to implement PREA-mandated safeguards for transgender inmates. Required practices—such as individualized housing assessments, serious consideration of an inmate's expressed views regarding their own safety, and proactive separation from known aggressors—are either ignored or applied in a cursory manner. Gender-appropriate accommodations, including privacy in showers or consistent use of affirming names and pronouns, are regularly denied.

PAGE 27 – CLASS ACTION COMPLAINT

82.    Transgender women in ODOC facilities are frequently subjected to sexual harassment, physical assault, and punitive segregation. ODOC often uses disciplinary or administrative isolation as a means of "protection," effectively punishing transgender inmates for the dangers they face due to ODOC's own housing decisions. Such isolation is degrading, traumatizing, and contravenes PREA's clear prohibition on using solitary confinement as a default for vulnerable inmates.

83.    When transgender women report abuse, ODOC staff frequently disregard or trivialize the complaints. Worse, some staff retaliate against those who file grievances or contact external authorities—by relocating them to more dangerous housing, subjecting them to disciplinary write-ups, or labeling them as "problem inmates." Even after documented assaults, ODOC regularly fails to take corrective or preventative action.

84.    ODOC has the capacity to house transgender women safely and consistent with their gender identity. Oregon operates a women's facility—CCCF—yet almost never places transgender women there, even when they meet all vulnerability criteria and present no management concerns. ODOC could also designate transgender-specific housing units or protective units within existing facilities. Despite this, it has refused to implement any systemic solution. Even in cases where litigation has confirmed the dangers (e.g., S.D., Z.Z., S.S.), ODOC has taken no meaningful steps to revise its policies or practices department wide.

85.    As a result of these policies and practices—and ODOC's deliberate indifference—transgender women in Oregon prisons face a daily, credible threat of harm. The injuries they suffer are not incidental, but the predictable and ongoing result of a broken classification system, punitive culture, and institutional disregard for the rights and safety of transgender people. This lawsuit seeks to remedy that systemic failure.

PAGE 28 – CLASS ACTION COMPLAINT

**CLAIMS FOR RELIEF**

Each of the following claims for relief is asserted by Plaintiffs on behalf of themselves and the class, against all Defendants (except where noted), and is based on the acts and omissions described in the preceding paragraphs. Plaintiff re-alleges and incorporates by reference all preceding factual allegations as if fully set forth in each claim.

**CLAIM I**

**42 U.S.C. § 1983 – Violation of the Eighth Amendment to the United States Constitution**

**(Deliberate Indifference to Substantial Risk of Serious Harm)**

**(Against All Defendants in Individual Capacities and ODOC Officials in Official Capacities**

**for Injunctive Relief)**

86.     The Eighth Amendment imposes a duty on prison officials to take reasonable measures to protect prisoners from violence at the hands of other prisoners, as well as to address known, serious medical and mental health needs. This duty is especially acute when officials are aware of a vulnerable group facing a heightened risk of sexual assault, harassment, and psychological harm.

87.     Defendants knew or should have known that transgender women face an extraordinarily elevated risk of sexual and physical violence when housed in male correctional facilities, a fact documented by the U.S. Department of Justice, the National Prison Rape Elimination Commission, ODOC's own PREA policy (Policy 40.1.13), and a series of prior lawsuits and judicial rulings against ODOC involving the same unconstitutional practices.

88.     Despite this knowledge, Defendants maintain a categorical practice of housing transgender women in men's prisons, often in cells with cisgender men, without adequate individualized assessment, protective housing alternatives, or access to safe programming. This

PAGE 29 – CLASS ACTION COMPLAINT

practice subjects Plaintiffs and class members to a daily, foreseeable risk of physical and psychological harm.

89.    Plaintiffs J.F. and S.D. have already suffered grave harm under these conditions, including brutal physical assault, repeated sexual harassment, and retraumatization from staff retaliation. Both remain housed in male institutions where they live in constant fear of renewed attack, endure degrading treatment from staff, and lack any assurance of safety. Their ongoing confinement under these policies presents a continuing and imminent threat of irreparable injury.

90.    ODOC's systemic practices—including blanket housing by genitalia, denial of transfers to CCCF or other safe placements, failure to implement PREA-compliant protocols, and punitive use of segregation—constitute deliberate indifference to a substantial risk of serious harm, in violation of the Eighth Amendment.

91.    As a direct and proximate result of Defendants' actions and omissions, Plaintiffs and class members have suffered and will continue to suffer physical injury, sexual assault, emotional trauma, exacerbated gender dysphoria, and deprivation of their constitutional rights.

92.    Absent immediate injunctive relief, Plaintiffs and class members face an ongoing and substantial likelihood of further assaults, harassment, retaliation, and psychological harm while confined in ODOC custody. Judicial intervention is therefore necessary to prevent irreparable injury and to bring ODOC's practices into compliance with constitutional requirements.

93.    Plaintiffs and the class therefore seek immediate injunctive relief requiring Defendants to remedy these ongoing constitutional violations. Specifically, Plaintiffs ask this Court to order ODOC to: (a) cease the categorical practice of housing transgender women in men's prisons without individualized safety review; (b) conduct timely, case-by-case housing

PAGE 30 – CLASS ACTION COMPLAINT

assessments with a presumption of placement consistent with gender identity unless a documented and articulable security concern demonstrates otherwise; (c) provide safe, non-punitive housing alternatives, including transfer to Coffee Creek Correctional Facility or the creation of voluntary transgender or gender non-conforming housing units; (d) prohibit the celling of transgender women with inmates who have a history of violence or sexual abuse absent the informed and voluntary consent of the transgender inmate; (e) ensure access to gender-affirming medical and mental health care, appropriate hygiene and commissary items, and privacy in showers and searches; (f) implement mandatory staff training on PREA compliance, use of appropriate names and pronouns, and zero tolerance for staff harassment or retaliation; and (g) establish independent oversight to monitor ODOC's compliance with these constitutional mandates.

## CLAIM II

**42 U.S.C. § 1983 – Violation of the Fourteenth Amendment (Equal Protection Clause) (Against All Defendants in Individual Capacities and ODOC Officials in Official Capacities for Injunctive Relief)**

94.    The Equal Protection Clause of the Fourteenth Amendment prohibits state officials from intentionally treating individuals differently from others who are similarly situated without a legitimate justification. Laws and policies that discriminate on the basis of sex and gender identity are subject to heightened scrutiny.

95.    Defendants maintain and enforce a policy and practice of classifying and housing transgender women exclusively in men's facilities based on genitalia, while cisgender women are afforded safe housing consistent with their gender. This categorical assignment denies

PAGE 31 – CLASS ACTION COMPLAINT

transgender women the safety, dignity, and gender-affirming placements provided to other similarly situated women in ODOC custody.

96.    Plaintiffs J.F. and S.D., as well as members of the putative class, have been subjected to differential treatment solely because they are transgender. Despite legal recognition of their female gender and known vulnerabilities, they are excluded from CCCF and other gender-affirming housing options, forced instead to live among cisgender men under conditions that foreseeably subject them to sexual assault, harassment, and degradation.

97.    This differential treatment is not justified by any legitimate penological interest. ODOC already provides specialized housing for other vulnerable groups, including youth, elderly, and mentally ill prisoners. The refusal to extend comparable protections to transgender women reflects discriminatory animus and deliberate indifference, not neutral correctional policy.

98.    Defendants' conduct discriminates against Plaintiffs and the class on the basis of sex and transgender status, depriving them of equal protection under the law. Plaintiffs are forced into unsafe placements, denied access to the same housing and accommodations that cisgender women receive, and retaliated against when they seek protection.

99.    As a result, Plaintiffs and class members continue to endure daily constitutional injuries, including exposure to heightened risk of assault, psychological trauma, and loss of equal dignity. Absent injunctive relief, ODOC will continue to enforce policies that intentionally and unjustifiably discriminate against transgender women in violation of the Fourteenth Amendment.

100.    Plaintiffs and the class therefore seek injunctive relief prohibiting Defendants from maintaining or enforcing policies that categorically exclude transgender women from women's facilities or otherwise deny them the same safety, dignity, and housing accommodations

PAGE 32 – CLASS ACTION COMPLAINT

provided to cisgender women in ODOC custody. Plaintiffs ask this Court to order Defendants to (a) eliminate genitalia-based classification and housing assignments; (b) ensure transgender women have equal access to Coffee Creek Correctional Facility and to gender-affirming protective housing units; (c) provide transgender women with equal access to programs, services, and privileges available to cisgender women; and (d) prohibit retaliation, harassment, and misgendering of transgender women by ODOC staff or inmates.

**CLAIM III**

**Violation of Article I, §§ 13 and 16 of the Oregon Constitution**

**(Cruel and Unusual Punishment and Unnecessary Rigor)**

**(Against Defendants in Their Official Capacities for Prospective Relief)**

101.    Article I, § 13 of the Oregon Constitution prohibits cruel and unusual punishment. Article I, § 16 prohibits treating incarcerated individuals with unnecessary rigor. These provisions guarantee that prisoners in state custody may not be subjected to degrading, dangerous, or excessive treatment beyond what is necessary for the lawful execution of their sentence.

102.    Defendants, acting in their official capacities as leaders of ODOC, have implemented and enforced a policy and practice of housing transgender women in male prisons without meaningful individualized assessments or protective safeguards. This practice subjects transgender women—including Plaintiffs J.F. and S.D. and all class members—to foreseeable risks of sexual violence, harassment, psychological trauma, and denial of adequate medical care.

103.    By categorically placing transgender women in men's prisons, ignoring credible warnings of danger, and failing to implement available alternatives such as housing at CCCF or

PAGE 33 – CLASS ACTION COMPLAINT

non-punitive protective units, Defendants have imposed conditions of confinement that constitute cruel and unusual punishment and unnecessary rigor under the Oregon Constitution.

104.    Plaintiffs and class members remain in ODOC custody under these unconstitutional conditions and continue to face an imminent risk of irreparable harm. Declaratory and injunctive relief is therefore required to prevent further violations and to ensure that transgender women in ODOC custody are treated with dignity, safety, and constitutionally adequate care.

105.    Plaintiffs and the class therefore seek declaratory and injunctive relief under Article I, §§ 13 and 16 of the Oregon Constitution. Specifically, Plaintiffs ask this Court to enjoin ODOC from continuing to impose "unnecessary rigor" and cruel punishment on transgender women by categorically housing them in male institutions without individualized review. Plaintiffs request that Defendants be ordered to: (a) conduct housing and classification determinations in a manner that affirmatively protects against unnecessary rigor, with a presumption of placement consistent with gender identity; (b) provide safe, non-punitive housing alternatives such as transfer to Coffee Creek Correctional Facility or voluntary protective units that preserve access to programs and privileges; (c) ensure that transgender women are not subjected to degrading treatment, including forced strip searches by male officers, exposure to male inmates while showering or undressed, or retaliatory use of solitary confinement; and (d) implement durable oversight and training measures sufficient to ensure lasting compliance with Oregon's constitutional guarantees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court enter judgment in their favor and against Defendants, and grant the following relief:

A.  Plaintiffs ask the Court to certify this action as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure, with a class defined as "All current and future transgender women incarcerated in ODOC facilities," and to appoint Plaintiffs S.D. and J.F. as class representatives and their counsel as class counsel pursuant to Rule 23(g).

B.  Plaintiffs request a declaratory judgment that Defendants' policies, practices, and omissions regarding the housing, classification, medical care, and protection of transgender women in ODOC custody violate the Eighth Amendment to the United States Constitution, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and Article I, §§ 13 and 16 of the Oregon Constitution.

C.  Plaintiffs further seek preliminary and permanent injunctive relief requiring Defendants, their successors, agents, and those acting in concert with them, to cease categorically housing transgender women in men's prisons without individualized review, to conduct timely case-by-case housing assessments with a presumption of placement consistent with gender identity unless a documented and articulable security concern requires otherwise, and to provide safe, non-punitive housing alternatives such as transfer to Coffee Creek Correctional Facility or the creation of voluntary transgender or gender non-conforming housing units.

D.  Plaintiffs seek an injunction requiring Defendants to prohibit the double-celling of transgender women with inmates known to have histories of violence or sexual abuse

PAGE 35 – CLASS ACTION COMPLAINT

absent informed and voluntary consent, to ensure access to gender-affirming medical and mental health care and appropriate hygiene and commissary items, to guarantee privacy and safety accommodations including separate shower facilities and a prohibition on strip searches by male staff, and to implement mandatory and ongoing training for all ODOC staff on PREA compliance, the rights and needs of transgender inmates, the use of affirming names and pronouns, and a zero tolerance policy for harassment or retaliation.

E. Plaintiffs ask the Court to enjoin Defendants from retaliating against any incarcerated person who files complaints, grievances, or reports regarding discrimination, abuse, or mistreatment on the basis of gender identity, and to require the creation of an independent oversight mechanism including external experts, advocates, or community representatives to monitor ODOC's compliance with these constitutional and statutory requirements.

F. Plaintiffs request that this Court issue a Temporary Restraining Order and preliminary injunctive relief as necessary to protect the named Plaintiffs from irreparable harm while this case is pending, and to retain jurisdiction to ensure full compliance with its orders and continuing enforcement of injunctive relief.

G. Plaintiffs seek an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, Or. Rev. Stat. § 20.107, and any other applicable law, and such other and further relief as the Court deems just, equitable, and proper.

**Plaintiffs, individually and on behalf of all others similarly situated, demand a trial by jury on all matters so triable.**

Dated: September 24, 2025.

SNYDER, POST AND BURGESS

*/s/ John Burgess*
John Burgess, OSB No. 106498
johnburgess@civilrightsoregon.com
Carl Post, OSB No. 061058
carlpost@civilrightsoregon.com
Tel: (503) 241-3617 / Fax: (503) 241-2249
Of Attorneys for Plaintiffs

Abby Greenfield, OSB No. 243463
abby@kedwards-law.com
LAW OFFICE OF KATHARINE EDWARDS
P.O. Box 417
Hillsboro, Oregon 97123
Telephone: (503) 664-0645
Of Attorneys for Plaintiff

PAGE 37 – CLASS ACTION COMPLAINT