DAN RAYFIELD
Attorney General
EDWARD 'JAKE' MILLER  #232113
Assistant Attorney General
KRISTIN A. WINGES-YANEZ #065520
Senior Assistant Attorney General
Department of Justice
100 SW Market St
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000

JESSICA B. SPOONER #105919
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Fax: (503) 947-4791
Email:  jake.miller@doj.oregon.gov
        kristin.winges-yanez@doj.oregon.gov
        jessica.b.spooner@doj.oregon.gov

Attorneys for LeGore, Nooth, Reese, Reyes, Wagner, and the State of Oregon (collectively referred to as "State Defendants")

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| S.D. and J.F., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MIKE REES; RYAN LEGORE; JEREMY WAGNER; MARK NOOTH; AARON REYES; JOHN DOES 1–5; and STATE OF OREGON, by and through the Oregon Department of Corrections,<br><br>Defendants. | Case No.  6:25-cv-01726-CL<br><br>DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR RECONSIDERATION |

Page 1 -   DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
            FOR RECONSIDERATION
JM9/da3/1026035428

Defendants hereby submit this Reply to Plaintiff's Response to Defendants' Motion for Reconsideration, ECF No. 58, filed 6/3/26 (hereinafter "Plaintiff's Response"). Plaintiffs' Response reframes the injunction as merely preserving narrowly-tailored "individualized review" and maintaining the status quo, but that mischaracterization ignores the Order's own language requiring "creative" changes and the new requirement of a default presumption taking the place of individualized review. Defendants seek reconsideration to correct these and other clear errors and prevent manifest injustice from an injunction that mandates system-wide, affirmative changes unsupported in the record, and ordered relief that is too vague to administer without risking harm to the very people it aims to protect.

Further Rebuttal of Plaintiff's Response follows.

## I.    Plaintiffs do not address the clearly erroneous factual errors in the Order

### A.    TAIC Housing Data

Plaintiffs' Response also fails to address a significant portion of the oral argument that took place on 3/17/26 and the supplemental data submitted by Defendants. Plaintiffs and the Court's Order fail to acknowledge that the transgender women AIC population at ODOC have complicated and diverse identifies and prison officials involved in determining their housing seek information on and consider individualized medical, security, social, privacy, and personal factors which contribute to an AIC's assigned housing placement. While Plaintiffs insist there must be a presumptive policy by ODOC placing transgender women at men's facilities, the data provided by ODOC demonstrate ODOC engages in highly individualized, thoughtful decision making in regards to transgender women AICs.

Plaintiffs continue to argue that Defendants arguments regarding the appropriateness of CCCF for all transgender female AICs are a strawman, however, it is Plaintiffs who repeatedly and incorrectly rely on the number of transgender female AICs currently placed at CCCF to support an assumption that ODOC's housing decisions are discriminatory.  The court adopted this reasoning in its order.  Plaintiffs and the court make assumptions about the intent of ODOC

Page 2 -    DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
FOR RECONSIDERATION
JM9/da3/1026035428

in housing decisions relying heavily if not entirely on the CCCF data, and it is unclear what evidence would prove to the court that ODOC's presumptions and intent are nondiscriminatory if not presumptive, mandatory placement at CCCF.

The Court also ignored the Supplemental Declaration of Greg Jones, which it requested at the conclusion of the 3/17/26 hearing, and which demonstrates all Plaintiffs and declarants represent a much smaller group of AICs that the putative class they seek to represent.

The Court uncritically accepted Plaintiff's repeated assertion that "over 90%" of transgender AICs are housed at men's facilities" and that this number was evidence of a default presumption. The Supplemental Declaration of Greg Jones demonstrates this number is misleading, because it is more accurate to view transgender women AICs in three distinct sub-groups: AICs who come into intake at Coffee Creek Intake Center (CCIC) having already begun transitioning in their previous community; AICs who assert their identity as transgender to TAIC during intake at CCIC; and AICs who assert their identity as transgender to TAIC subsequent to a housing assignment in their previous identity as a cisgender man or nonbinary.

Whether and when an AIC asserts her transgender female identity is a critical component to evaluating her circumstances and housing.  The CCCF placements rates for each of these populations is distinct, and demonstrates the differing concerns for each group leading to individualized placements based on an AIC's actual need. CCCF is not uniformly best housing assignment presumption for all transgender AICs at different stages of their medical, social, and privacy transitions.

Only five transgender women AICs came into ODOC custody as legally female and requested assignment to CCCF as of January 2026. See Jones Suppl. Decl., ECF 42, ¶ 6. Three of these five transgender women AICs, or 60%, were placed at CCCF after intake. *Id.*

As of January 2026, six transgender women were housed at CCCF of 27 who requested CCCF, meaning ~22% of transgender women who request housing at CCCF are approved. *Id.*

Page 3 -   DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
        FOR RECONSIDERATION
        JM9/da3/1026035428

Two more transgender women AICs never requested placement at CCCF, but were assigned housing there anyway. *Id.,* at ¶ 5.

The majority of transgender women AICs, 83 out of 117, or >70%, had not requested transfer to CCCF. *Id.* at ¶6. 85 of the 113 transgender AICs, or >75%, asserted their identity as transgender women after housing assignment at a male facility subsequent to intake. *Id.* Only ~23% of transgender women request CCCF. *Id.*

The testimony on record is that over 70% of transgender women AIC do not request placement at CCCF. The record shows a minority of transgender women request CCCF. Plaintiffs and their declarants are all from the same, small demographic of 21 out of 113 transgender women, or ~18% of the entire population transgender women AIC population, who requested CCCF after being assigned housing at a predominately men's facility and were denied. The court clearly erred by uncritically accepting >90% transgender women paced in men's housing as evidence Defendants were deliberately indifferent to transgender women's safety when the data clearly shows >70% do not request CCCF, and the evidence before the court demonstrated that housing decisions are made in collaboration with transgender women AICs. If the Court had further questions about this data or the methods obtaining it, it is clear error for the court injunctive relief prior to scheduling further evidentiary hearings.

**B.    Housing Assignment Justifications**

Plaintiffs also misstate the relief ordered by the court when they assert "If a transgender woman prefers to remain in a men's facility for privacy, medical, programming, support-network, safety, or other individualized reasons, ODOC may consider that preference during reassessment…. The order does not require otherwise." Plaintiff's *Response*, ECF No. 48, pg 9.

The order expressly only accepts documented and articulable <u>security</u> justifications as the sole criteria excusing ODOC from placing transgender women AIC's at facilities other than CCCF. See Opinion and Order, ECF No. 45, pg. 28. The court's order expressly states "the default will be to house the transgender inmate at CCCF." *Id.,* at page 29. The court's order has

Page 4 -    DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
             FOR RECONSIDERATION

no allowance for privacy, medical, programming, support-network, safety, or other individualized reasons; only "documented and articulable security justifications" warrant a placement at an institution other than CCCF.  The court directs this despite the record demonstrating ODOC conducts six-month housing reviews for every transgender inmate and more than 70% of transgender women AICs do not request housing at CCCF. Plaintiffs offered no evidence this 70% of transgender women AICs would benefit from placement at CCCF, and the Court clearly erred in failing to allow for justifications other than security to determine housing placements for transgender women AICs.

C.    PREA Definition Clarification

Plaintiff's Response misapprehends the importance of the distinction between "unsubstantiated," and "unfounded" under the Prison Rape Elimination Act (PREA) noted by Defendants in their motion. Plaintiffs misstate Defendant's Motion when writing, "A prison system cannot defeat a failure-to-protect claim simply by pointing to its own inability or failure to substantiate reports of sexual violence, particularly where Plaintiffs submitted sworn accounts and evidence that reports were ignored, delayed, mishandled, or followed by retaliation." See ECF No. 58, pg. 8.

Defendants are not asking the Court to make any findings regarding the investigations themselves, which should be the province of a more thorough evidentiary hearing. Defendants asked the Court to find it was clear error to find Plaintiff's declarations were *uncontested* where Defendants submitted evidence some or most of the events described by Plaintiffs and their declarants were found not to have occurred at all, or that there was insufficient evidence to establish they did occur.

Defendants offered these past findings as a method to contest and impeach Plaintiff's and their declarants' accounts. It was clear error to find that Defendants did not contest the factual allegations contained in Plaintiff's declarations.

Page 5 -    DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
            FOR RECONSIDERATION
            JM9/da3/1026035428

The same statement in Plaintiffs' *Response* alleging failures of ODOC's investigations also ignores Defendants testimony ODOC diligently substantiated some PREA complaints by Plaintiff and their supporting declarants. See Decl. of Ericka Jones, ECF No. 28, ¶ 6-8. ODOC substantiated one PREA Complaint by declarant L.B. regarding another AIC who called L.B. beautiful while "looking [L.B.] up and down," and ODOC entered a complex level conflict on L.B.'s behalf. *Id.* at ¶ 6. ODOC substantiated one PREA Complaint by Plaintiff J.F., in which another AIC touched J.F.'s breast while she was on a softball field. *Id.* at ¶ 7. ODOC substantiated multiple PREA complaints by former AIC S.S. and current AIC Jane Doe. *Id.* at ¶ 5, 8. Ericka Sage's testimony regarding the details of these substantiated PREA complaints by L.B. and J.F. demonstrate her close personal knowledge of these complaints. Sage's testimony acknowledged multiple substantiations of Jane Doe's PREA-Complaints, some of which occurred at Coffee Creek Correctional Facility (CCCF) while Jane Doe was housed there at Jane Does' request, some of which were committed by women, and some of which were committed by transgender women. *Id.* at ¶ 8.

This testimony supports a finding Defendants take the adjudication of PREA complaint substantiations seriously, and contests the accusation Defendants ignore allegations of rapes and assaults in Plaintiff's supporting declarations, particularly by J.F., L.B., and S.S.

The Court may have preferred Defendants adopt a different strategy, such as by submitting declarations and files under seal on each of the Plaintiff's declarants' PREA complaints. As stated in Defendants Motion, Defendants had good reason to attempt to focus on the policies and procedure for all transgender women AICs instead of present every PREA investigation or file as they are more directly relevant to the issue of housing assignment. But regardless, Defendants *also did contest* the factual allegations made by Plaintiffs and their declarants. The Court's finding Defendants failed to contest Plaintiff's declarations, substantively or otherwise, is clear error.

Page 6 -   DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
           FOR RECONSIDERATION

## II.    Plaintiffs' Response does not address the clear error of preliminary class certification.

Plaintiff's Response does not engage with Defendant's identified error in the Court's Order: that Plaintiff's failed to prove that there is not a common question of law or fact facing the diverse group of transgender women AICs. The record developed by Defendants clearly established Plaintiffs and their declarants can only speak for ~21 of the 113 transgender AICs who identified as men or nonbinary at intake, who asserted their transgender female identity subsequent to their assignment to a men's facility, subsequently requested placement at CCCF and were denied. The Court erred when it based its order on a negative inference the other ~91 were unaware they could be transferred to CCCF, despite nothing in the record supporting this conclusion. Plaintiffs again misstate the standard the court must apply when they write, "Defendants are suggesting that because 91 trans women have not formally requested housing at CCCF, that means those inmates are content with their current housing." Plaintiff's Response, ECF No. 58, pg. 11. The issue is not whether this group of 91 transgender women are content with their housing, it is whether the court may draw an unsupported inference the AICs are unaware of the possibility of transfer to CCCF. Plaintiffs do not testify they or their declarants were unaware of their option to request CCCF.  To the extent the Court has further questions about the record, it cannot speculate, it should have ordered further evidentiary proceedings prior to ordering preliminary injunctive relief for the putative class.

As argued in Defendant's Motion, preliminary class certification is appropriate where there is clear evidence of systemic policies or practices upon which a court could find the element of commonality met. Plaintiffs' Response again fails to identify specific written policies or practices as the plaintiffs did in *Armstrong v. Davis,* 275 F.3d 849 (9th Cir. 2001), or *Parson v. Ryan,* 754 F.3d 657, 683 (9th Cir. 2014).

Defendants do not argue the facts need to be identical, as Plaintiff suggest, but they do need to share commonality, typicality, and adequacy. Defendants have a robust process that is

Page 7 -    DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
FOR RECONSIDERATION
JM9/da3/1026035428

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(971) 673-1880 / Fax: (971) 673-5000

individualized to each transgender woman AIC. Class certification for the putative population is inappropriate because each transgender woman AIC will have their individualized privacy, medical, programming, support-network, safety, or other concerns which may be at odds with other members, and many transgender AICs have conflicts with one other. Individual review and relief is more appropriate for the ~21 putative class members who were denied CCCF placements after a request, and the court clearly erred by speculating the 91 transgender women AICs who did not request placement at CCCF shared the same or similar circumstances as Plaintiffs and their declarants.

Plaintiff J.F.'s and declarant L.B.'s security concerns were extensively documented and articulated in the record, and declarant Jane Doe has already been assigned to CCCF twice. The Court's order regarding the "presumptive" housing placement relief sought by Plaintiffs and declarant faces the very real possibility it will result in housing changes for many other putative class members *except* the declarants and Plaintiffs. That would not be the anticipated or proper outcome of a preliminary class finding and injunction. It is clear error to order relief based on Plaintiff's personal declarations that likely will not apply to the same individuals in those declarations, but all other putative class members.

For similar reasons it is clear error to find the facts demonstrated likely irreparable harm for Plaintiffs and their declarants, and then leave open whether or not the ordered injunctive relief would even apply to them. The order is not narrowly tailored to correct the found likely irreparable harm where it does not apply to the individuals whose record prompted the finding.

The court could have ordered reassessment for the two individual declarants who requested placement at CCCF and were denied, J.F. and L.B., and asked Defendants to present more detailed security justifications for the housing decisions. Such relief would have included Plaintiffs and their in-custody declarants. Such an order would have been narrowly tailored to address the record developed by Plaintiffs and declarant testimony. But putative class injunctive relief unlikely to materially change any Plaintiff or declarant's housing assessment, and only

Page 8 -   DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
             FOR RECONSIDERATION
             JM9/da3/1026035428

affect transgender women AICs absent from the case, is clear error. It is also an injustice to the transgender women AICs for whom men's facilities are appropriate for any number of reasons including choice or long-term stability where the court's required security justification is missing. **Plaintiff's Eighth Amendment claim hinges on an outdated study whose conclusions do not support a finding of deliberate indifference**

Plaintiffs restate their argument the record includes "national evidence of the disproportionate risk of sexual assault faced by transgender women in men's facilities." ECF No. 58, pg. 16. Plaintiffs did not establish this study put Defendants on actual notice of an excessive risk to the putative class's safety to the AICs in Oregon custody in 2026. The Court also erred in relying on this referenced study without an expert to properly summarize and explain its findings. ECF No. 45, page 16, footnote 1.

Importantly, Defendants acknowledge that PREA standards reflect that study's findings that transgender female AICs were at a higher risk of sexual assault nationally, but that does not automatically satisfy the actual knowledge of excessive risk of harm prong of Eighth Amendment analysis in this case.  Defendants properly objected to this  at the 3/17/26 hearing and in their response to Plaintiff's request for a Preliminary injunctive on the basis that it is more than a decade old and there is nothing in the study indicating Oregon data was used in developing the 34.6% sexual victimization statistic quoted by Plaintiffs and the Court.  The study and the PREA standards themselves are not to be substituted as the legal standard under the Eighth Amendment.

This study does not establish deliberate indifference on the part of ODOC staff, and to find otherwise is clear error. The question is whether Plaintiffs showed that *all* transgender women AICs in Oregon custody face a substantial excessive risk of serious harm and not just "speculative and generalized fears of harm at the hands of other prisoners." *Williams v. Wood.,* 223 Fed.App'x 670, 671 (9th Cir. 2007). All parties and the court acknowledge a transgender identity in a carceral setting can increase the risk of sexual victimization: it is one of the PREA

Page 9 -   DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
      FOR RECONSIDERATION
         JM9/da3/1026035428
                        Department of Justice
                        1162 Court Street NE
                        Salem, OR 97301-4096
                  (971) 673-1880 / Fax: (971) 673-5000

risk factors. ODOC has a specific committee devoted exclusively to this issue: the TAIC committee.

Plaintiffs offered no evidence their study constitutes *actual notice of excessive risk* for the putative class. The standard is not that the prison official should have been aware of the excessive risk, the standard is that the prison official was actually aware of the excessive risk. *Farmer v. Brennan,* 511 US 825, 828, 114 S Ct 1970, 1973, 128 L ED 2d 811 (1994) ("an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment"). The Court erred in finding a likelihood of success on Plaintiff's Eighth Amendment claim as applied to the whole class.

Even if the Court finds the Defendants were likely to succeed on their personal claims and circumstances, Plaintiffs offered no evidence Defendants were aware of an excessive risk to all transgender women AICs by housing them in men's prisons, particularly when Oregon's local data determined over 70% of transgender women AICs in ODOC custody do not request to be housed elsewhere and where the case law on the issue establishes transgender women AICs are not de-facto entitled to placement at women's facilities.

No state's placement of transgender women in men's facilities would be constitutional under the Court's rationale, since the study relied upon is national in scope. Subsequent to the development of this relied-upon study, courts in Washington state, the District of Columbia, and New Jersey all declined to extend *Farmer* to hold transgender women are constitutionally entitled to placement in women's facilities. *See Gordon v. Inslee,* No. 3:21-CV-5802-BJR-DWC, 2023 WL 2874062, *11 (W.D. Wash. Feb 6, 2023), *Richardson v. D.C.,* 322 F. Supp.3d 175, 184185 (D.D.C. 2018); and *Minor v. Dilks,* 2022 WL 3369707, at *6 (D.N.J. August 16, 2022). The Court clearly errs by relying on this study to establish Defendants' actual awareness of an excessive risk for the putative class.

JM9/da3/1026035428

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(971) 673-1880 / Fax: (971) 673-5000

### III.    Plaintiff's Equal Protection Claim

Plaintiffs and Defendants agree similarly situated individuals, whether transgender women or cisgender women, should be treated equally. In the majority of contexts, cisgender and transgender women can and should be treated the same. It is not discriminatory or unconstitutional to acknowledge the majority of transgender women AICs come into custody with a different known gender identity. It is not discriminatory to acknowledge their intake process is not similarly situated to cisgender women AICs. It is not discriminatory to acknowledge cisgender women AICs do not experience the process of coming out as transgender women. If an AIC long established at a men's facility newly asserts an identity as a transgender woman, it is not discriminatory for ODOC to decide that individual can or should remain at her assigned housing for privacy, medical, programming, support-network, safety, or other individualized reasons. It is commonly known, and a reasonable inference from the Declarations of Greg Jones and Dawnell Meyers, that transgender individuals may keep their identities partially or completely private while they begin their transition or even after completing any transition that best suits their identity. As the majority of transgender women AICs assert their identities post-incarceration, it should not be surprising these AICs largely remain at men's facilities for myriad reasons. The Court's Order criticizes Defendants for not supplying Declarations from this population without recognizing the paradox of asking an AIC who wishes to remain private to publicly declare their opinion on the topic they wish to keep private

Very few transgender women AICs come into intake post-transition and requested a women's facility, only five of 113. Of those five, three, or 60%, were placed at CCCF at their request.  Two more were placed at CCCF without the AIC's specific request. The fact more than one AIC did not need to specifically request CCCF to be placed there upon intake is excellent evidence Defendants are engaging in individualized placements. The record demonstrates there is not a default housing assessment system in place for transgender women, but an individualized

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(971) 673-1880 / Fax: (971) 673-5000

one accounting for the AICs current individualized needs at the time they present for housing review, either at intake or upon request or identification.

The Court clearly erred in holding Defendants categorically excluded transgender women from CCCF, and it was clear error for the court to apply an incorrect "likely to succeed" standard in lieu of the appropriate "clearly favor" standard.

## IV.    Defendants and Plaintiffs' disagreements regarding the contents of the order demonstrate the order is impermissibly vague.

Plaintiff's Response argues Defendants may continue to consider privacy, medical, programming, support-network, safety, or other individualized reasons for housing transgender women AICs at men's facilities. But these rationales do not appear in the Court's order, and the court's order leaves only "documented and articulable security concerns" as justifying placement of transgender AICs in men's facilities.

The court order maintains it is "narrowly tailored," but asks the Defendants to be "creative" with its implementation. These principles are fundamentally at odds with one another and leave Defendants unclear as to what it may consider when determining transgender women AICs housing placements. The relief is also contrary to the requirement of the Prison Litigation Reform for intervention as minimal as possible to correct a found constitutional violation. The vagueness of the order prejudices both parties: neither Plaintiffs nor Defendants are on notice as to what actions would constitute contempt.

## V.    Relief is premature where the court's ordered relief rests on factual errors.

Plaintiffs state, "The Court asked the parties at a preliminary hearing whether the parties wished to put on live testimony of witnesses and defendants declined to do so." ECF No. 58, page 19. While ultimately Defendants did not make an official record on 2/9/26 of an objection to the Court's preference for argument on the briefing only, Defendants did request the live testimony of Greg Jones and Ericka Sage at the hearing on the preliminary injunction on 3/17/26.

Page 12 -   DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
            FOR RECONSIDERATION
            JM9/da3/1026035428

Plaintiffs also mischaracterize the court's order for an evidentiary hearing as an attempt to "refine implementation" of the Order. *Id.,* at pg. 20. But the Court's order is clear the hearing is to "present evidence as to Plaintiffs' requests for relief." ECF. No 45, pg 25-26. The consideration of Plaintiff's requests is necessary before the court orders relief.

## VI.    CONCLUSION

Plaintiff's Response does not engage with the central arguments of Defendant's Motion. The court should reconsider its clearly erroneous findings, clear the preliminary class certification, and allow the parties to present a fuller evidentiary hearing. The Court should reconsider its Order because the evidentiary and legal standards made by the Court are unsupported and the relief is impermissibly vague.

DATED July  1 , 2026.

Respectfully submitted,

DAN RAYFIELD
Attorney General


    *s/ Edward 'Jake' Miller*
EDWARD 'JAKE' MILLER #232113
Assistant Attorney General
JESSICA B. SPOONER #105919
KRISTIN A. WINGES-YANEZ #065520
Senior Assistant Attorneys General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
jake.miller@doj.oregon.gov
jessica.b.spooner@doj.oregon.gov
kristin.winges-yanez@doj.oregon.gov
Of Attorneys for State Defendants

Page 13 -  DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
        FOR RECONSIDERATION
        JM9/da3/1026035428

## CERTIFICATE OF SERVICE

I certify that on July __1__, 2026, I served the foregoing DEFENDANTS' REPLY TO

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR RECONSIDERATION upon

the parties hereto by the method indicated below, and addressed to the following:

| | |
|---|---|
| **John D Burgess** | ___ HAND DELIVERY |
| **Carl Lee Post** | ___ MAIL DELIVERY |
| **Snyder, Post and Burgess** | ___ OVERNIGHT MAIL |
| 1000 S.W. Broadway, Ste 2400 | ___ TELECOPY (FAX) |
| Portland, OR 97205 | _X_ E-MAIL |
| *Of Attorneys for Plaintiff* | *johnburgess@civilrightsoregon.com;* |
| | *carlpost@civilrightsoregon.com* |
| | _X_ E-SERVE |

| | |
|---|---|
| **Abby Greenfield** | ___ HAND DELIVERY |
| **Law Office of Katharine Edwards** | ___ MAIL DELIVERY |
| P.O. Box 417 | ___ OVERNIGHT MAIL |
| Hillsboro, OR 97123 | ___ TELECOPY (FAX) |
| *Attorney for Plaintiff* | _X_ E-MAIL |
| | *abby@kedwards-law.com* |
| | _X_ E-SERVE |


    *s/ Edward 'Jake' Miller*

EDWARD 'JAKE' MILLER #232113
Assistant Attorney General
JESSICA B. SPOONER #105919
KRISTIN A. WINGES-YANEZ #065520
Senior Assistant Attorneys General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
jake.miller@doj.oregon.gov
jessica.b.spooner@doj.oregon.gov
kristin.winges-yanez@doj.oregon.gov
Of Attorneys for State Defendants

Page 1 -    CERTIFICATE OF SERVICE
       JM9/da5/1000803143