UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **S.D.** and **J.F.**, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**MIKE REES; RYAN LEGORE; JEREMY WAGNER; MARK NOOTH; AARON REYES; JOHN DOES 1–5; and STATE OF OREGON**, by and through the Oregon Department of Corrections,<br><br>Defendants. | Case No. 6:25-cv-01726-CL<br><br>**OPINION AND ORDER** |

**CLARKE,** United States Magistrate Judge.

This case is brought by Plaintiffs, S.D. and J.F., individually and on behalf of a putative class of all current and future transgender women in Oregon Department of Corrections ("ODOC") custody. Defendants now move for reconsideration of Court's Opinion and Order (ECF #45) granting Plaintiffs' Motion for Preliminary Injunction and Provisional Certification of a Class Action. For the reasons below, Defendant's Motion (ECF #47) is GRANTED in part and DENIED in part. Defendants' request that the Court de-certify the class and strike the relief previously granted is DENIED. Defendants' request for clarification and modification of the relief is GRANTED, in part. An Amended Order for Preliminary Injunction will follow.

## BACKGROUND

A full discussion of the facts, the claims, and the parties' positions is contained in the Court's previous Opinion and Order (ECF #47) and will not be restated here. In granting

Page 1 — OPINION AND ORDER

provisional certification of the class and the preliminary injunction, the Court found that

Plaintiffs met their burden to certify a class and met their burden to impose a mandatory

preliminary injunction. The Court ordered the following class-wide relief:

1. Immediately end the categorical housing of transgender women in men's facilities without individualized safety assessments and instead conduct prompt, case-by-case housing and classification reviews for all transgender women in ODOC custody, with a presumption of placement consistent with each woman's gender identity absent a documented and articulable security justification.
2. Provide safe, non-punitive housing options for transgender women, including (as appropriate) transfer to CCCF, voluntary transgender or gender non-conforming housing units within existing facilities, or other protective placements that do not involve involuntary segregation or loss of programming solely because of transgender status.
3. Prohibit housing transgender women with cisgender cellmates known to have a history of sexual or serious physical violence.
4. Ensure that transgender women have access to separate showers or shower schedules that provide reasonable bodily privacy from male prisoners and staff and implement policies to prevent forced exposure of nude bodies to male inmates.
5. Require that unclothed searches of transgender women be conducted by female staff absent extraordinary, documented circumstances and prohibit cross-gender strip searches otherwise.
6. Implement immediate, confidential, and non-retaliatory reporting mechanisms for sexual abuse, harassment, and threats, including effective PREA-compliant hotline access and prompt, good-faith investigations of all such reports with measures to protect reporters from retaliation.
7. Provide interim mental health support, including crisis counseling, for transgender women who report sexual abuse or exhibit suicidality related to unsafe housing or retaliation.

## DISCUSSION

Defendants move for reconsideration, contending the Court erred by making factual

findings that were clearly erroneous, erred in certifying a class, and erred by granting a

preliminary injunction.  Defendants also argue that the relief granted is not narrowly tailored, and

will not appropriately serve the class, as currently defined. For the reasons below, Defendants'

motion for reconsideration is denied, and the motion for clarification and modification of the

preliminary injunction is granted in part.

I.    **Defendants' Motion for Reconsideration is denied**.

Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (internal quotation marks omitted). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). "A motion for reconsideration prompts a two-step inquiry. First, whether the court should reconsider a prior ruling; and second, if the court determines it should reconsider a prior ruling, whether the court should change the prior ruling." *Beck v. Metro. Prop. & Cas. Ins. Co.*, No. 3:13-CV-00879-AC, 2014 WL 4404962, at *4 (D. Or. Sept. 5, 2014). "Whether or not to grant reconsideration is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003). Here, there has been no intervening change in controlling law, nor has the Court been presented with newly discovered evidence. As discussed below, Defendants contend that the Court committed clear error, and the Court disagrees. For these reasons, the Motion is denied.

A.    **The Court did not make clearly erroneous factual findings.**

Defendants argue that the Court improperly disregarded the declarations of Ericka Sage and Greg Jones, as well as the factual evidence presented as to ODOC housing decisions.

First, the Court properly evaluated the weight given to the declaration of Ericka Sage, considering the type and level of detail presented in the testimony. Many of the statements in the Sage declaration merely re-stated ODOC policies, such as:

> 13. ODOC does not house AICs in the same cell who are designated by the PREA objective screening tool as potentially vulnerable with AICs who are designated as

> potentially aggressive, regardless of their status as transgender, intersex, nonbinary, or gender fluid.
>
> 14. When an AIC identifies or presents as transgender or intersex during intake, staff ask the AIC to identify whether they prefer male or female correctional officers perform the AIC's initial search at intake and staff accommodate the AIC's stated preference when possible.

Sage Decl p. 4. These statements were not helpful to the Court in determining whether these policies were actually carried out in the individual cases of the Plaintiffs and declarants, or more broadly across the state correctional system.

In response to pages of detailed, specific factual allegations presented by Plaintiffs and their declarants, the Sage declaration merely stated whether some incidents alleged had been found to be substantiated, unsubstantiated, or unfounded.[1] As noted by Defendants, these terms have specific meanings under the PREA: unfounded "means an allegation that was investigated and determined not to have occurred," and unsubstantiated "means an allegation was investigated and the investigation produced insufficient evidence to make a final determination as to whether or not the event occurred." 28 C.F.R. §115.5. However, the Sage declaration did not offer sufficient details for the Court to determine the adequacy of the investigations that were

---

[1] The paragraphs of the Sage Declaration responding to Plaintiffs' and declarants' specific allegations are reproduced here, in their entirety:

> 5. Former AIC S.S. was both an alleged PREA victim and an alleged PREA perpetrator. S.S. was involved in seven non-assaultive sexual misconducts, has been the victim of sexual harassment twice, and was the suspect in an abusive sexual contact.
>
> 6. AIC L.B. has been both an alleged PREA victim and an alleged PREA perpetrator. The only substantiated incident was in December 2024, and it was another AIC who called her beautiful while "looking her up and down." The suspect admitted to this behavior and was written a misconduct report. A complex level conflict was entered.
>
> 7. AIC J.F. has been an alleged PREA victim. The only substantiated incident occurred in May 2025 in which another AIC touched her breast while on the softball field.
>
> 8. AIC Jane Doe has been an alleged PREA victim and an alleged PREA perpetrator. Of her multiple PREA allegations, 33 were unsubstantiated or unfounded and 12 were substantiated. Of those 12, one was a code of conduct violation, nine were for sexual harassment, and two were for abusive sexual contact. Some of the substantiated PREA conduct occurred at Coffee Creek Correction Facility, some were committed by women, and some were committed by transgender women.

undertaken in any specific case, or the impact of those investigations on the evaluation of any AIC's housing placement.

For instance, according to the Sage declaration, the only substantiated PREA incident involving J.F., "occurred in May 2025 in which another AIC touched her breast while on the softball field." No information is provided about the incident in which she alleges that she refused to have sex with her cellmate and he fractured her orbital socket, Decl. J.F. at ¶4 (ECF #16), or the incident in which she alleges that she and a gang member cellmate warned an officer that the placement was unsafe, the cellmate raped her, and no investigation took place for 8 months. *Id.* at ¶5. Plaintiffs therefore raised questions of fact regarding not just whether the PREA incidents took place, but also the adequacy of ODOC's PREA responses, investigations, and conclusions. The Court determined that the Sage Declaration's conclusory statements were an insufficient response to these allegations. This evaluation was not clear error.

Second, the Court properly evaluated the weight given to the declaration of Greg Jones, which stated, "[n]ot all transgender female AICs want to be housed at CCCF. Some transgender female AICs specifically request placement at men's facilities, for a variety of reasons, and may be granted such placement when it is appropriate." Jones Decl. ¶8 (ECF #27). In evaluating this statement, the Court noted that the Defendants had not provided any corroborating evidence, including any statements by specific transgender inmates who requested placement in men's facilities. Defendants contend that such statements would have been "ethically questionable," considering the proposed class and request for class certification, and the potential risk of revealing the identities of inmates who wish to remain anonymous. As to the first concern, this issue could have been raised with opposing counsel or with the Court during discovery or during

briefing of the motion.[2] As to the second concern, it is unclear why Defendants could not have submitted anonymous statements. Plaintiffs submitted multiple declarations of inmates who preferred to remain anonymous, and there is no indication that their names have been revealed publicly due to this lawsuit. Regardless, even without a declaration from an AIC, the Jones declaration could have provided more concrete information about specific instances of AICs who prefer to be housed in a men's facility, without revealing any personally identifying information. The lack of such specific information made the Jones declaration less useful to the Court, compared to the factually specific declarations provided by Plaintiffs. The Court's evaluation of the sufficiency of the evidence provided was not clear error.

Finally, Defendants assert that "the Court misconstrued the facts presented by Defendants related to housing assignments," pointing to the Court's discussion of the insincere transgender AIC, who requested to be housed at CCCF so he could have contact with female inmates (Opinion and Order, ECF #45). Defendants misunderstand the Court's reference to that part of the record. The Court did not conclude that ODOC assumes that all AICs are not genuinely transgender, nor did the Court conclude that ODOC does not complete individualized assessments. Noting that none of the Plaintiffs or declarants had a disputed transgender status, nor had ODOC offered any evidence that any of the 117 in-custody transgender AICs were not genuinely transgender, the Court merely dismissed "the narrative proposed by ODOC that there are AICs (or possibly only one AIC) who merely claim to be transgender, in order to be housed at CCCF." *Id.* Despite the irrelevance to the material facts of this case, the Court explicitly

---

[2] Rule 4.2 states: "In representing a client or the lawyer's own interests, a lawyer shall not communicate or cause another to communicate on the subject of the representation with a person the lawyer knows to be represented by a lawyer or LP on that subject <u>unless: (a) the lawyer has the prior consent of a lawyer or LP representing such other person; (b) the lawyer is authorized by law or by court order to do so</u>... ." Oregon Rules of Professional Conduct (Feb. 1, 2026) (emphasis added).

acknowledged the truth that the evidence purported to stand for: that prison housing issues are complex and high stakes. This was not clear error.

### B.     The Court did not clearly err in certifying the class.

Defendants disagree with the outcome of the Court's analysis regarding commonality, adequacy, and typicality, but does not identify clear error requiring reconsideration.

Defendants' main contention rests on a dispute regarding the Court's conclusion that ODOC has a policy of presumptive placement in men's facilities, based upon the 91 out of 117 transgender AICs who are placed in men's facilities. Defendants assert that these 91 AICs have not requested to go to CCCF, the women's prison, and they argue that these AICs must therefore prefer placement in men's facilities.

First, the lack of a request to transfer to CCCF is not the same as an affirmative request to remain housed in a men's facility. Defendants submitted evidence, as stated in the Jones Declaration, that between 2018 and 2024, declarant S.S. affirmatively requested to be housed at predominately male institutions. Jones Decl. ¶ 12. If Defendants had similar evidence that the 91 AICs at issue here made affirmative requests to be housed in men's facilities, the Court assumes they would have offered that evidence. They did not do so, instead insisting that the Court adopt their preferred inference, that a lack of a request to transfer means that the AIC prefers placement in a men's facility.

Defendants' preferred inference is not more likely or more valid than the inference that these 91 AICs simply do not know they must make a formal request for a housing transfer. According to Defendants' own records, Plaintiff J.F. has been in ODOC custody since May of 2008, and she first identified to ODOC as transgender in February of 2015. J.F. did not request a transfer to CCCF until August of 2021, despite her declaratory testimony that she had conversations with staff about wanting a transfer to CCCF in 2019. Decl. J.F. at ¶3 (ECF #16).

Page 7 — OPINION AND ORDER

The record therefore supports the inference that, for the intervening two or more years, J.F. did not know that she had to make a formal housing transfer request. It is not illogical or implausible to further infer that other AICs could be similarly unaware of the process to formally request a housing transfer. The inference made by the Court is not clear error.

The other issues identified by Defendants as errors in this section are sufficiently addressed by the Court's Opinion and Order, and the Court declines to reconsider the analysis provided there.

### C.    The Court did not clearly err by granting a preliminary injunction.

The Court determined that Plaintiffs met the higher burden for a mandatory injunction by finding that the law and the facts clearly favor Plaintiffs' position as to their claims under the Eighth Amendment. Opinion and Order p. 15-19 (ECF #45). The Court also found that Plaintiffs were likely to succeed on their Equal Protection claim, but the meeting of the lower standard does not invalidate the higher standard met as to the other claim.

Regarding the substance of the determination, Defendants assert that the national studies and statistics cited by Plaintiffs and noted by the Court are an inappropriate measure of the specific risks faced by transgender AICs in Oregon. However, the Court's analysis also considered the attested declarations and first-hand evidence in the record submitted by Plaintiffs and declarants, including the "numerous examples of the actual violence they have experienced, and ODOC's awareness of that violence." Opinion and Order p. 16 (ECF #45). The Court then determined that Defendants' conclusory response to Plaintiffs' evidence was insufficient, as discussed above. This disparity of evidence led the Court to conclude that the facts and law clearly favored Plaintiffs as to their claim under the Eighth Amendment. Defendants fail to show that this was a clear error.

**D.    The Court's order complies with Rule 65.**

Fed. R. Civ. P. 65 (d)(1) states:

Every order granting an injunction and every restraining order must:
  (A) state the reasons why it issued;
  (B) state its terms specifically; and
  (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.

Here, the Court granted a preliminary injunction, stating the reasons why – that Plaintiffs had shown that the facts and law favored their position that a default presumption of housing in men's facilities, and a failure to provide other protections and investigations into violence by male AICs, had created a risk of serious injury in violation of the Eighth Amendment. The Court stated the terms specifically, identifying the class-wide relief, Orders 1-7. *Supra* p. 2. The Court also described in reasonable detail how the Defendants should continue providing individualized assessments, while also beginning those assessments from a different default position as to placement, and requiring Defendants to provide other assurances of safety for the AICs who remain in the men's facilities, such as the shower access, strip-search requirements, reporting mechanisms and good faith investigations for PREA incidents, and AIC mental health resources. To the extent that no line-by-line operating manual was provided, the Court intentionally left logistical details open to allow ODOC the flexibility to implement these orders in ways that will be safe and effective for inmates and staff. The preliminary injunction complies with Rule 65.

**II.    Defendants' request for clarification and modification of the relief ordered is granted in part.**

Despite the lack of clear error, or any other legal justification for reconsideration of the Court's Opinion and Order granting the Preliminary Injunction, the Court agrees that the orders for relief could be further clarified to prevent misunderstanding and to assist with implementation. In particular, the first order for relief stated that the individualized housing

assessment should include a "presumption of placement consistent with each woman's gender identity absent a documented and articulable security justification." Based on the full context of the Opinion and Order, it should have been clear that this presumption applies as a starting point for each assessment, which should begin with the default presumption that an AIC should be housed consistently with their gender identity (unless there exists a documented and articulable security justification), and then the assessment should continue from there – taking into consideration the inmate's preferences, their privacy, access to medical support, programming, support-network, safety, or other individualized reasons for placement in a specific facility. The order for relief therefore dictates only a starting point, as discussed several times in the Opinion and Order, but does not dictate an outcome for any individual AIC. Nevertheless, in an abundance of caution, and to soothe the Defendants' agitation and concern, the Court will amend the order for relief to clarify this point.

The Court will also clarify that an AIC's preferences may be taken into consideration for any one of the orders for relief granted, when that preference is voluntary and informed, after a meaningful review of options.

Finally, Defendants continue to express concern that this lawsuit will cause harm to AICs who do not wish to be openly identified as transgender. The flexibility to consider an AIC's preference is an important part of this process, and every effort should made to prioritize inmate safety and privacy. The Court sees no reason that additional protections should compromise those priorities.

## ORDER

Defendant's Motion for Reconsideration (ECF #47) is granted in part and denied in part. An Amended Order for Preliminary Injunction will be entered separately.

It is so ORDERED and DATED this _____ day of July, 2026.

_____
MARK D. CLARKE
United States Magistrate Judge